UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TENISHA BOBIEN ) <br> ) <br> Plaintiff, ) <br> ) Case No. _____ <br> v. ) <br> ) <br> ALEXANDRIA CITY PUBLIC SCHOOLS ) <br> ) JURY TRIAL DEMAND <br> SERVE: ) <br> Alexandria City School Board ) <br> Clerk of the School Board ) <br> 1340 Braddock Place ) <br> Alexandria, VA 22314 ) <br> ) <br> and ) <br> ) <br> RANDSTAD US, LLC ) <br> ) <br> SERVE: ) <br> Corporation Service Company ) <br> Registered Agent ) <br> 100 Shockoe Slip, Floor 2 ) <br> Richmond, VA 23219 ) <br> ) <br> Defendants. ) <br> ) | |

**COMPLAINT**

Plaintiff Tenisha Bobien ("Plaintiff" or "Ms. Bobien"), by and through her counsel, submits this Complaint against Defendants Alexandria City School Board and Randstad US, LLC (collectively, "Defendants"), and alleges as follows:

**NATURE OF ACTION**

1. This action states federal claims of discrimination based on sex, the creation of a hostile work environment based on sex, and retaliation against Plaintiff in violation of Title VII

1

of the Civil Rights Act of 1964, as amended. Specifically, this matter arises from the sex-based discrimination, hostile work environment, and retaliation suffered by Plaintiff while employed by Defendants which culminated in Defendants' constructive discharge of Plaintiff.

2. This action states additional claims of assault, battery, and negligent retention against Alexandria City School Board in violation of Virginia common law.

## PARTIES

3. Ms. Bobien is a woman and an adult resident of Virginia.

4. Defendant Alexandria City School Board ("ACSB") operates Alexandria City Public Schools ("ACPS"), including Patrick Henry School ("Patrick Henry") in Alexandria, Virginia, where Ms. Bobien worked.

5. ACSB is charged by the statutes of Virginia and the regulations of the Virginia Board of Education to operate the public schools of the City of Alexandria by setting general school policy and establishing guidelines that will ensure the proper administration of ACPS programs.

6. Defendant Randstad US, LLC ("Randstad") is a foreign limited liability company that provides staffing solutions to clients in a variety of industries. Randstad is registered to do business in the Commonwealth of Virginia.

7. Randstad employed Ms. Bobien, whom it assigned to work as an administrative assistant for its client, ACPS.

8. Ms. Bobien was an "employee" of ACPS and Randstad within the meaning of 42 U.S.C § 2000e(f).

9. ACPS and Randstad are "employers" within the meaning of 42 U.S.C. § 2000e(b).

10. ACPS and Randstad shared effective control over Ms. Bobien's employment to an extent that rendered both entities her joint employers.

11. Both ACPS and Randstad had the authority to hire and fire Ms. Bobien and participated directly in the day-to-day supervision of Ms. Bobien in the completion of her tasks at Patrick Henry.

12. ACPS furnished the equipment Ms. Bobien used in her position and her place of work, Patrick Henry. Ms. Bobien completed duties akin to administrative assistants directly employed by ACPS. Ms. Bobien accepted no additional assignments, whether to other positions or entities, throughout the duration of her employment with ACPS.

13. Randstad maintained Ms. Bobien's employment records, including payroll, insurance, and taxes, and communicated regularly with Ms. Bobien about the completion of her work at Patrick Henry. Throughout Ms. Bobien's assignment to the administrative assistant position at ACPS, Randstad provided Ms. Bobien with no additional assignments.

14. ACPS is engaged in an industry affecting commerce and, on information and belief, had greater than fifteen employees during the relevant time periods in each of twenty or more calendar weeks in the current or preceding year, within the meaning of 42 U.S.C. § 2000e(b).

15. Randstad is engaged in an industry affecting commerce and, on information and belief, had greater than fifteen employees during the relevant time periods in each of twenty or more calendar weeks in the current or preceding year, within the meaning of 42 U.S.C. § 2000e(b).

**JURISDICTION AND VENUE**

16. This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States, specifically Title VII.

17. This Court has supplemental jurisdiction over Ms. Bobien's state law claims against Defendants under 28 U.S.C. § 1367(a) because the facts of the federal and state claims occurred in this judicial district and form part of the same case or controversy.

18. Defendants are subject to personal jurisdiction of the Court because they regularly conduct business within this judicial district.

19. Venue is proper in the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. §1391.

**FACTUAL ALLEGATIONS**

20. Ms. Bobien began working for Randstad in or around August 2019.

21. Randstad assigned Ms. Bobien to work for ACPS as an Administrative Assistant at Patrick Henry in or around October 2019.

22. Randstad and ACPS served as joint employers of Ms. Bobien.

23. ACPS controlled the day-to-day supervision of Ms. Bobien's work, furnished the equipment she used to work and the place of her work, and assigned her duties as an administrative assistant similar to those assigned to employees who filled the same role at ACPS.

24. Randstad hired Ms. Bobien and assigned her to the position at ACPS, a Randstad client. Ms. Bobien communicated with Randstad Senior Account Development Manager Telisa Brown ("Ms. Brown") regularly about the assignment. Ms. Bobien contacted Ms. Brown to

discuss questions and concerns about the position itself, as well as to discuss administrative matters such as attendance, time approval, and her paycheck.

25. Throughout the duration of her employment at ACPS, Ms. Bobien accepted no other assignments from Randstad.

26. From the start of her employment with ACPS, Ms. Bobien became the target of crude sexual harassment by another ACPS employee, Darnell Robinson ("Robinson").

27. Ms. Bobien and Robinson both worked in the front office at Patrick Henry and Ms. Bobien was regularly required to interact with Robinson in the performance of her work duties.

28. Robinson stared at Ms. Bobien in a manner that made her feel uncomfortable and began to make sexually inappropriate remarks to Ms. Bobien within the first few weeks of her employment at ACPS.

29. Robinson told Ms. Bobien she looked "sexy," and that her "ass is fat."

30. Upon learning that Ms. Bobien was in a relationship, Robinson told Ms. Bobien that her "boyfriend doesn't know what he has."

31. Robinson's unwanted attention and comments made Ms. Bobien extremely uncomfortable at work.

32. Ms. Bobien worried about the attire she wore to ACPS each day and how it might attract unwelcome and unwarranted attention from Robinson. She was consistently occupied with how best to distance herself from Robinson to avoid his advances.

33. Robinson also made inappropriate comments to Ms. Bobien about the parents of Patrick Henry students with whom she interacted as part of her duties.

34. Robinson referred to one such parent as a "girl that [he] hit."

35. Ms. Bobien interpreted this comment to mean that Robinson had engaged in a sexual relationship with the parent to whom he referred.

36. On another occasion, Robinson nodded toward a different parent and bragged to Ms. Bobien, "I fucked that lady."

37. Ms. Bobien learned that at least one teacher had complained to ACPS previously about Robinson's sexually inappropriate comments and behavior.

38. On information and belief, ACPS took no meaningful action to discipline Robinson or otherwise address the issue.

39. Ms. Bobien complained to Principal Ingrid Bynum's ("Bynum") administrative assistant, Tammy Williams ("Williams"), about Robinson's behavior and remarks. Williams informed Ms. Bobien, "that's just how [Robinson] is."

40. In or around mid-December 2019, Robinson, while seated next to Ms. Bobien at a table in the front office, bent down and reached under the table as if to retrieve a dropped item from the floor.

41. Rather than retrieve any item, Robinson rubbed Ms. Bobien's bare calf with his hand.

42. Robinson then looked at Ms. Bobien, bit his lip, and told her "I want you."

43. Ms. Bobien felt embarrassed and violated by Robinson's actions and told Robinson in no uncertain terms not to touch her.

44. After Ms. Bobien rebuked Robinson's advance, Robinson began to treat Ms. Bobien in an increasingly rude and aggressive manner.

45. After Robinson's increasingly aggressive behavior, inappropriate touching, and disgusting sexual comments, Ms. Bobien increasingly feared Robinson after she rebuked him.

46.     In January 2020, upon returning to work following the holiday break, Robinson aggressively grabbed a book from Ms. Bobien's hands, frightening and startling her.

47.     Startled by Robinson's actions, Ms. Bobien cursed, and then immediately apologized to the one or two individuals within earshot, adult employees of ACPS, for her use of inappropriate language.

48.     On or about January 6, 2020, Ms. Bobien and Robinson were asked to jointly meet with Bynum, Assistant Principal Pamela Buckley ("Buckley"), Dean of Students Andre Keys ("Keys"), and Williams.

49.     Ms. Bobien learned the meeting had been called to discuss a complaint by Robinson that Ms. Bobien had spoken to him using inappropriate language.

50.     During this meeting, Ms. Bobien detailed Robinson's inappropriate sexual comments and advances toward her, including his having rubbed her leg with his hand and having aggressively grabbed a book from her hands.

51.     At the close of the meeting, Bynum instructed both Robinson and Ms. Bobien to act like adults. Bynum recommended to Ms. Bobien that she "fix this situation" and told Ms. Bobien, "I can't fix it for you."

52.     ACPS, through Bynum, ignored her responsibility to take remedial action in the face of inappropriate sexual conduct and touching and, instead, put the onus on Ms. Bobien to address the situation. In fact, ACPS failed to take any action in response to Ms. Bobien's complaint about Robinson's sexually inappropriate comments and behavior.

53.     Based on ACPS' failure to act, Ms. Bobien believed any additional attempts to complain about Robinson would be futile.

54. Ms. Bobien was required to work in close proximity to Robinson in the front office of Patrick Henry for the remainder of her employment with ACPS.

55. Emboldened by ACPS' failure to act, Robinson engaged in even more openly hostile and aggressive toward Ms. Bobien.

56. Over the next two weeks, Robinson gave Ms. Bobien the middle finger on more than one occasion while they worked together. Robinson glared at Ms. Bobien while she worked and rolled his eyes when Ms. Bobien spoke.

57. Ms. Bobien was fearful that Robinson would become even more physically aggressive with her as a result of ACPS' failure to act.

*ACPS' Notice of Additional Complaints Against Robinson*

58. On or about January 21, 2020, Ms. Bobien called Ms. Brown at Randstad, to inform Ms. Brown of the continued sex-based hostile work environment at ACPS and her unsuccessful attempt to bring the issue to Bynum's attention.

59. Ms. Brown informed Ms. Bobien she would speak to Bynum and others at ACPS to address the issues Ms. Bobien had raised.

60. Ms. Brown asked Ms. Bobien if she felt comfortable continuing to work at ACPS, and Ms. Bobien informed her she did not, as no remedial actions had been taken.

61. Ms. Brown instructed Ms. Bobien not to report to ACPS until she, Ms. Brown, had an opportunity to meet with Bynum and find out what was going on.

62. On or before January 24, 2020, ACPS learned of multiple complaints by female employees of sexual harassment by Robinson.

63. On information and belief, ACPS learned of these complaints through an Education Association of Alexandria (EAA) representative. The EAA is a non-profit labor organization and the recognized representative of the employees of Alexandria City Public Schools.

64. Ms. Brown met with Bynum and others at ACPS on or about January 27, 2020.

65. During this meeting, ACPS insisted to Ms. Brown that no prior complaints had been received about Robinson and that it could not guarantee Robinson would be disciplined or removed from Patrick Henry as a result of Ms. Bobien's complaints. ACPS would not commit to separating Robinson from Ms. Bobien.

66. ACPS did not inform Ms. Brown or Ms. Bobien that it intended to investigate Ms. Bobien's complaints about Robinson.

67. In fact, ACPS initiated an investigation of Robinson that same day as Ms. Brown's meeting with Bynum, on or about January 27, 2020.

68. Of the 17 female employees Bynum spoke with during the course of this investigation, 12 reported Robinson having made inappropriate comments to them of a sexual nature, such as repeatedly asking them on dates, asking to touch or smell them, flirting with them, or asking intrusive questions about their relationship status or personal lives.

69. More than one of the employees interviewed reported that Robinson touched them inappropriately or invaded their personal space in a way that made them uncomfortable.

70. No one from ACPS or Randstad reached out to Ms. Bobien to discuss her allegations against Robinson as part of any investigation into his actions or behavior.

71. ACPS placed Robinson on administrative leave on January 30, 2020.

*Ms. Bobien's Resignation from ACPS and Termination by Randstad*

72. On or about January 31, 2020, Ms. Bobien spoke to Ms. Brown over the phone to inquire about the outcome of Ms. Brown's meeting with ACPS.

73. Based on the information relayed to her by Ms. Brown, Ms. Bobien did not feel satisfied that ACPS intended to remedy the sex-based hostile work environment of which she had complained.

74. Ms. Bobien did not know that Robinson had been placed on administrative leave.

75. Ms. Bobien did not know that if she returned to work, she would no longer be required to work alongside Robinson.

76. For these reasons, on or about January 31, 2020, Ms. Bobien informed Ms. Brown she did not feel safe returning to the position at ACPS. Ms. Bobien believed that the only way to guarantee her safety was to resign.

77. Ms. Bobien told Ms. Brown she remained interested in any other full-time assignment Randstad could offer her in the area.

78. Ms. Brown communicated Ms. Bobien's resignation to ACPS.

79. Randstad offered Ms. Bobien only one, temporary one-day assignment in February 2020 before it terminated her employment.

80. Randstad provided Ms. Bobien with no reason for her termination.

*Exhaustion of Administrative Remedies*

81. On June 8, 2020, Ms. Bobien timely filed a charge of discrimination against Defendants based on sex, hostile work environment, and retaliation with the United States Equal Opportunity Commission ("EEOC").

82. The EEOC issued Ms. Bobien a Notice of Right to Sue in this matter against ACPS on September 28, 2020.

83. The EEOC issued Ms. Bobien a Notice of Right to sue in this matter against Randstad on December 14, 2020.

84. Plaintiff has exhausted her administrative remedies as required by 42 U.S.C. § 2000e, et seq.

85. This matter is timely filed within ninety (90) days of Plaintiff's receipt of her Notice of Right to Sue as to both Defendants from the EEOC.

## COUNT I
## SEX DISCRIMINATION AND HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF TITLE VII
## 42 U.S.C. § 2000e
*Against Defendant Alexandria City Public Schools*

86. Plaintiff re-alleges and reasserts each and every allegation set forth above, as if each were set forth herein.

87. Ms. Bobien is a member of a protected class based on her sex, female.

88. Ms. Bobien was subjected to the actions and conduct described above on account of her sex in violation of Title VII, 42 U.S.C. § 2000 et seq.

89. Defendant subjected Ms. Bobien to discrimination and a hostile work environment based on her sex in violation of the provisions of Title VII.

90. The discrimination and hostile work environment were severe and pervasive, based on the nature of the harassment and the frequency with which it occurred, including frequent use of sexually inappropriate comments and unwanted physical touching of Ms. Bobien's person.

91. ACPS, through Robinson, treated Ms. Bobien in a manner likely to humiliate her, and his actions did in fact have that effect.

92. Ms. Bobien complained to Defendant about Robinson's actions.

93. Defendant failed to act appropriately in response to Ms. Bobien's complaints about Robinson by disciplining or removing him from Patrick Henry. Defendant's failure to act caused Ms. Bobien to be subject to additional discriminatory and harassing treatment by Robinson.

94. Defendant failed to take remedial action to address Ms. Bobien's complaint of sex harassment and discrimination against Robinson.

95. The harassment suffered by Ms. Bobien began immediately upon her employment and continued throughout the duration of her employment by Defendant.

96. The effect of this harassment and hostile work environment was to deprive Ms. Bobien of equal employment opportunities, which culminated in the constructive termination of Ms. Bobien by Defendant.

97. Defendant knew or should have known of the discrimination and harassment faced by Ms. Bobien as well as many other women at Patrick Henry.

98. Defendant ratified the conduct of Robinson by failing to take appropriate remedial action despite having knowledge of his discrimination and harassment of women employed by ACPS at Patrick Henry.

99. In performing the acts and engaging in the conduct described herein, ACPS, through Robinson, caused Ms. Bobien to suffer and continue to suffer emotional distress.

100. As a direct and proximate result of the acts and conduct of ACPS described herein, Ms. Bobien suffered a loss of earnings and related employment benefits in an amount to be proven at trial.

101. Defendant's acts alleged herein were malicious, oppressive, and in conscious disregard of Ms. Bobien's rights. As such, punitive damages are warranted against ACPS.

## COUNT II
## RETALIATION
## IN VIOLATION OF TITLE VII
## 42 U.S.C. § 2000e
*Against Both Defendants*

102. Plaintiff re-alleges and reasserts each and every allegation set forth above, as if each were set forth herein.

103. Title VII prohibits retaliation for engaging in protected activity; in pertinent part, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment. . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

104. Ms. Bobien engaged in protected activity by voicing complaints of discrimination to Bynum at ACPS and to Ms. Brown at Randstad.

105. Ms. Bobien's complaints to Bynum were based on her reasonable and good faith belief that she had been subjected to illegal sex discrimination and harassment by Robinson at ACPS.

106. Ms. Bobien's complaint to Ms. Brown at Randstad was based on her reasonable and good faith belief that the sex discrimination and harassment she faced at Patrick Henry had created a hostile work environment in which she no longer felt comfortable working.

107. ACPS failed to investigate Robinson in response to Ms. Bobien's initial complaint to Bynum and instead allowed the discrimination and harassment of Ms. Bobien to continue.

108. Bynum's insistence that Ms. Bobien was responsible for fixing the problem and ACPS' failure to appropriately respond to Ms. Bobien's complaints about Robinson constituted retaliation, as it led to the constructive termination of Ms. Bobien's employment.

109. ACPS and Randstad failed to inform Ms. Bobien of ACPS' intent to investigate Robinson, of Robinson's suspension, or of Robinson's termination.

110. ACPS and Randstad retaliated against Ms. Bobien by forcing her to continue working with Robinson in order to maintain her position.

111. Randstad retaliated against Ms. Bobien by failing to assign her to a different position after Ms. Bobien determined the hostile work environment at ACPS would not be remedied.

112. Upon information and belief, Randstad could have assigned Ms. Bobien to a number of full-time positions with its clients for which Ms. Bobien was fully qualified.

113. Randstad further retaliated against Ms. Bobien when it terminated her employment on February 29, 2020, despite her stated and continued interest in full-time assignments and the availability of such assignments in the area.

114. This conduct by Defendants was actuated by malice, spite, and ill will; was willful and wanton, and evinced conscious disregard for the rights of Ms. Bobien. As such, Ms. Bobien is entitled to punitive damages.

115. As a direct and proximate result of the acts and conduct of Defendants as alleged herein, Ms. Bobien has suffered loss of earnings and related employment benefits in an amount to be determined at trial.

**COUNT III**
**ASSAULT**
**IN VIOLATION OF VIRGINIA COMMON LAW**
*Against Defendant Alexandria City Public Schools*

116. Plaintiff re-alleges and reasserts each and every allegation set forth above, as if each were set forth herein.

117. On multiple occasions during Ms. Bobien's employment, Robinson's words and actions put Ms. Bobien in apprehension of imminent harmful and offensive bodily contact.

118. Robinson put Ms. Bobien in fear of imminent harmful and offensive bodily contact when he unexpectedly rubbed her calf with his hand and told her that he "wanted" her.

119. Robinson also put Ms. Bobien in fear of imminent harmful and offensive bodily contact when he forcibly and aggressively grabbed a book from her hands without speaking to her.

120. Robinson continued to invade Ms. Bobien's personal space despite her having expressed discomfort with his proximity and having requested he not touch her.

121. Robinson was acting in the scope of his employment with ACPS on all occasions when he placed Ms. Bobien in apprehension of harmful and offensive bodily contact.

122. Robinson and Ms. Bobien were working together in the front office of Patrick Henry when Robinson assaulted her.

123. Robinson used the premises of Patrick Henry to harass and assault parents, teachers, and staff at the facility.

15

124. Robinson harassed and assaulted at least twelve (12) female teachers at the school, pursuant to ACPS' own investigation.

125. ACPS knew, or should have known, of Robinson's propensity for inappropriate sexual comments and aggressive actions of a sexual nature that placed women at the school in fear for their safety.

126. ACPS ratified Robinson's actions by failing to discipline or terminate his employment immediately despite having knowledge of this propensity.

127. Because ACPS knew of Robinson's conduct, it was on notice of his behavior and is therefore liable for his actions.

128. ACPS is vicariously and strictly liable pursuant to the doctrine of respondeat superior for Robinson's tortious actions.

129. As a result of Robinson's battery, Ms. Bobien suffered financial loss, shame, humiliation, indignity, embarrassment, severe emotional distress including physical manifestations of that distress, and emotional damage.

**COUNT IV**
**BATTERY**
**IN VIOLATION OF VIRGINIA COMMON LAW**
*Against Defendant Alexandria City Public Schools*

130. Plaintiff re-alleges and reasserts each and every allegation set forth above, as if each were set forth herein.

131. Robinson touched Ms. Bobien in a harmful and offensive manner when he rubbed her bare calf with his hand while making lewd and sexually inappropriate comments to her at the workplace.

132. Robinson did so unlawfully and without privilege or consent from Ms. Bobien.

133. Robinson was acting in the scope of his employment with ACPS when he touched Ms. Bobien in a harmful and offensive manner.

134. Robinson and Ms. Bobien were working together in the front office of Patrick Henry when Robinson assaulted her.

135. Robinson used the premises of Patrick Henry to harass and assault parents, teachers, and staff at the facility.

136. Robinson harassed and assaulted at least twelve (12) female teachers at the school, pursuant to ACPS' own investigation. Robinson's actions included repeated intrusion into the personal space of female employees at Patrick Henry in a manner designed to make such employees uncomfortable.

137. ACPS knew, or should have known, of Robinson's propensity for inappropriate sexual comments and aggressive actions of a sexual nature that placed women at the school in fear for their safety.

138. ACPS ratified Robinson's actions by failing to discipline or terminate his employment immediately despite having knowledge of this propensity.

139. Because ACPS knew of Robinson's conduct, it was on notice of his behavior and is therefore liable for his actions.

140. ACPS is vicariously and strictly liable pursuant to the doctrine of respondeat superior for Robinson's tortious actions.

141. As a result of Robinson's battery, Ms. Bobien suffered financial loss, shame, humiliation, indignity, embarrassment, severe emotional distress including physical manifestations of that distress, and emotional damage.

## COUNT V
## NEGLIGENT RETENTION
## IN VIOLATION OF VIRGINIA COMMON LAW
### *Against Defendant Alexandria City Public Schools*

142.  Plaintiff re-alleges and reasserts each and every allegation set forth above, as if each were set forth herein.

143.  ACPS knew or should have known that Robinson was dangerous and likely to harm other employees. ACPS should not have retained Robinson as an employee.

144.  ACPS had actual or constructive knowledge that Robinson had previously engaged in dangerous conduct that consisted of the assault and battery of at least one female coworker, and likely many more, prior to any assault or battery by Robinson of Ms. Bobien.

145.  Robinson's sexually inappropriate comments and behavior were commonly known by Ms. Bobien's co-workers.

146.  ACPS was either aware, or should have been aware, of Robinson's propensity for inappropriately touching women in the workplace.

147.  Despite this knowledge, ACPS took no remedial action to increase that safety of the workplace environment for women who worked with Robinson.

148.  But for ACPS' failure to act, Ms. Bobien would not have been subjected to a physical assault and battery by Robinson.

149.  ACPS should have known that its failure to act to protect female employees from Robinson would likely result in harm, and in fact resulted in harm to Ms. Bobien.

150.  ACPS' negligence proximately and factually caused Ms. Bobien to experience severe emotional distress and physical manifestations of such distress.

151.  Ms. Bobien has suffered and continues to suffer shame, humiliation, indignity, embarrassment, and emotional distress as a result of ACPS' negligence.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Tenisha Bobien requests that this Court enter judgment in her favor, against Defendant Alexandria City Public Schools on all Counts and against Defendant Randstad US, LLC as to Count II of her Complaint and further:

(a) Award compensatory damages to Plaintiff, plus past and future pecuniary damages on each of the above-stated Counts in an amount that can only be determined in discovery;

(b) Award Plaintiff punitive damages as to each of her respective Counts in an amount to be determined at trial;

(c) Award attorneys' fees, costs, and expenses incurred by Plaintiff in this action to the extent permitted by law; and

(d) Award any further relief this Court deems just and appropriate under the circumstances.

**JURY DEMAND**

**PLAINTIFF TENISHA BOBIEN HEREBY REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated: December 24, 2020

                                                           /s/
Joshua Erlich, VA Bar No. 81298
Davia Craumer, VA Bar No. 87426
Katherine Herrmann, VA Bar No. 83203
The Erlich Law Office, PLLC
2111 Wilson Blvd.
Suite 700
Arlington, VA 22201
Tel: (703) 791-9087
Fax: (703) 722-8114
Email: jerlich@erlichlawoffice.com
        dcraumer@erlichlawoffice.com
        kherrmann@erlichlawoffice.com